MARIA JESUS FARIAS *v.* ELESERIO M. FARIAS, AN-
TONIO FARIAS, DANIEL FARIAS, ROSA FA-
RIAS, AND ADELAIDE FARIAS, ALL MINORS,
BY THE GUARDIAN OF THEIR PERSONS AND
ESTATE, E. G. DA SILVA; E. G. DA SILVA,
GUARDIAN OF THE PERSONS AND ESTATE OF
SAID ELESERIO M. FARIAS, ANTONIO FARIAS,
DANIEL FARIAS, ROSA FARIAS AND ADELAIDE
FARIAS, MINORS AS AFORESAID; MARY FA-
RIAS, SARAH FARIAS NUNES, LYDIA FARIAS
AH CHIN, ANGELINA FARIAS AND JOHN M.
FARIAS; AND THE SOCIEDADE LUSITANA
BENEFICIENTE DE HAWAII, AN HAWAIIAN
CORPORATION.

## No. 954.

### SUBMISSION WITHOUT ACTION.

ARGUED JULY 12, 1916.                    DECIDED AUGUST 3, 1916.

### ROBERTSON, C.J., WATSON AND QUARLES, JJ.

BENEFICIAL ASSOCIATIONS—*validity of declaration—change in by-laws.*
    A declaration designating the beneficiaries of a death benefit
which was valid under the by-laws in force at the time it was
made and valid also under those in force when the declarant
died, will take effect according to its terms, unaffected by changes
which occurred in the interim.

SAME—*death benefits—by-laws construed.*
    The by-laws of a mutual benefit society provided that upon the
death of the wife of a member he should be paid a benefit through
an assessment of twenty-five cents levied upon each married mem-
ber of the society. Upon the death of the wife of a member he
was paid such a benefit amounting to $262.25. Subsequently, by
amendments to the by-laws the system was changed, and it was
then provided that upon the death of the wife of a member he
would be paid a benefit in the fixed sum of $400; it was provided
also that upon the death of a member his beneficiaries would be
paid a benefit in the sum of $1500 if he "shall not have at any
time received a death benefit by reason of the death of his wife,"

and that if he "shall have at some time received a benefit upon the death of his wife" the sum payable to his beneficiaries would be $1100. Held, that upon the death of the member who had received the benefit of $262.25, upon the death of his wife, his beneficiaries were entitled to demand from the society only the sum of $1100.

OPINION OF THE JUSTICES BY ROBERTSON, C.J.

The plaintiff is the widow of Antonio Medeiros Farias, deceased, who at the time of his death was a member of the Sociedade Lusitana Beneficiente de Hawaii, an incorporated mutual benefit society. The defendants, other than the corporation, are the children of the said Antonio M. Farias by a former marriage, and such of them as are minor are represented by their guardian, E. G. Da Silva. The agreed facts out of which the main controversy has arisen are substantially as follows: The deceased became a member of the society on December 8, 1890, and remained a member in good standing until his death; his first wife died on or about the 22d day of September, 1907; on September 30, 1907, the deceased filed with the society a written declaration disposing of the death benefit which, under the by-laws of the society would become payable upon his demise, one-half to his daughter Angelina and the other half to be equally divided among his other children, subject to certain conditions not material here; in the by-laws which were then in force (adopted in 1903) it was provided that upon the death of any member in good standing a death benefit consisting of the sum of one dollar to be paid in by each member would be collected by the society and "paid as a death benefit in the following order: 1st. To the widow. 2nd. To the children" of the decedent, with the proviso that "The provisions of this article with relation to the persons who shall receive the death benefit are not absolute, the member having the power to dispose of not more than half of the death benefit to his children. If he shall leave a widow only, he shall have the right to dispose

of not more than half to his parents and to his brothers and sisters" (Art. 23); there were other provisions in those by-laws which would apply in the event that the deceased member should leave neither widow nor children (Arts. 24, 25); there was no special provision covering the case of a member leaving children but no widow, but article 29 provided that "The provisions of Articles 23, 24, 25 and 26 can be carried into effect in accordance with the wish of the member by his declaring to what ones of the persons named and in what shares the part of his death benefit shall be paid by using a form furnished by the Society and filed with it;" the deceased married the plaintiff on October 15, 1910; he died on February 8, 1915, and left no children by either marriage other than those above named; in a new set of by-laws adopted to be in force from and after January 1, 1914, it was provided that there should be a death benefit fund which would be composed of the balance then in such fund together with such part of the monthly dues of members as should be set apart therefor by the board of directors (Art. 20), and that upon the death of a member the society would pay to the beneficiaries the sum of $1500, except as provided in article 24, which will be referred to in connection with the controversy between the society and the other parties hereto (Art. 22); the by-laws in force at the time of the death of the deceased also contained the following provisions: "If there shall be unmarried children under sixteen years of age, born of a previous marriage, half of the death benefit shall be paid to the widow and the other half shall be divided in equal parts between all the unmarried children who are under sixteen years of age" (Art. 25); "Every member of legal age who shall be of perfectly sound mind shall have the power to dispose of the death benefit within the circle of his family, by which is meant parents, children, widow, brothers and sisters" etc. (Art. 26); and "Whenever the member shall not dispose of

the death benefit in the manner indicated by the By-laws
and the circumstances referred to in Article 24 (admitted
to be a typographical error and meaning article 25) shall
not exist, the Board of Directors shall pay the death ben-
efit to the relatives in the order following:    (1) To the
widow.   (2) To the children.   (3) To the parents.   (4) To
the brothers and sisters" etc., (Art. 30).

On behalf of the plaintiff it is contended that under the
by-laws which were in force at the date of the declaration
made and filed by the decedent he was without power to
designate his children as beneficiaries to the extent of more
than one-half of the death benefit or, as between them, as
beneficiaries in other than equal shares, and that as the
declaration named the children as sole beneficiaries and in
unequal shares it was invalid and void; also that the new
by-laws could have no "retroactive" effect and, therefore,
have no application in the premises, but that the by-laws
which were in force at the date of the declaration apply,
and that as under those by-laws no member leaving a widow
could deprive her of more than one-half of the death bene-
fit, the declaration of the decedent was inoperative at least
as to one-half which is the amount now claimed by the
plaintiff.   And while counsel in their brief, referring to the
by-laws of 1914 and the question whether article 25 applies
to this case, say that "this question can be material only
in the event that the declaration or designation filed by
the member in 1907 should be held by this court as having
been rendered valid and operative by said Article 26," and
say also that they "are forced to concede that after a care-
ful consideration" of the question whether article 25 or
article 26 is applicable "they have come to the conclusion
that article 26 takes precedence over Article 25," yet they
claim that the plaintiff is entitled to one-half of the benefit
"whether Section 25 applies or not."

On behalf of the defendants, other than the society, it is

contended that the by-laws in force at the date of the death of the decedent control; that the declaration filed in 1907 was a valid declaration when it was made, but that as it was revocable and did not take effect until the death of the declarant, the by-laws in force at the time it was made have no application; that article 25 of the by-laws of 1914 applies only in cases where no declaration has been made and filed by the deceased member; and that article 26, under which the declaration in question is unobjectionable, governs the case.

It must be conceded that if the decedent had died prior to January 1, 1914, when the new by-laws took effect, his widow, though no provision was made for her in the declaration, would have been entitled to one-half of the death benefit. But that event did not occur. At the time the decedent filed the declaration he had no wife living, and we think that under the by-laws then in force he had the right to designate his children as the sole beneficiaries of the benefit in the manner in which he did. Under article 23 of the by-laws then in force a death benefit was not to be *divided* between the widow and children, but was payable *"in the following order:* 1st. To the widow. 2nd. To the children." That is to say, if the member had filed no declaration and left surviving a widow and children the widow would have taken the whole benefit. But article 29 provided that the provisions of article 23 "can be carried into effect in accordance with the wish of the member by his declaring to what ones of the persons named and in what shares the part of the death benefit shall be paid," and under the authority of that article a member leaving children but no widow at his death could have designated his children as sole beneficiaries in unequal portions. The declaration of the decedent, therefore, was valid when it was made, and it is not necessary that the by-laws of 1914 be given a retrospective effect in order to render it valid. It

will not be necessary to further consider counsel's argument which is based on the assumption that the declaration was not a valid one at the time it was made, or to consider the question whether a designation is effective which though violative of the by-laws in force when it was made is in harmony with those in force at the time of the death of the member. We are satisfied that the declaration in question was in harmony with the by-laws of 1914. Article 25, by express reference thereto in article 30, is connected therewith and must be regarded as operative only in the event that the deceased member filed no declaration. Under the plain provisions of article 26 the decedent was authorized to "dispose of the death benefit within the circle of his family." That he did do by naming his children. The fact that if the decedent had died prior to the amendment of the by-laws the widow would have shared in the benefit does not affect the case. The contract of membership was between the society and the decedent. His wife had no vested interest in the death benefit at any time during the lifetime of her husband, and there was nothing to prevent a change being made in the by-laws affecting the rights of widows of members in any case, at least, where the wife was not named in the declaration as a beneficiary. We hold that as the declaration designating the beneficiaries of the death benefit was valid under the by-laws in force at the time it was made, and was also valid under those in force when the decedent died, it will take effect according to its terms, and is not affected by the changing circumstances of the interim. The children of the decedent are entitled to the benefit, and his widow has no claim therein.

The second part of this controversy involves the right of the society to make certain deductions from the death benefit payable to the beneficiaries. By the agreed facts it is admitted that the society is authorized to deduct the sum of $184.50 for funeral expenses paid and attorney's

fees incurred by it, but it asserts, and the other parties deny, that it may deduct the further sum of $262.25 which represents the amount of a death benefit paid to Antonio M. Farias at the time of the death of his former wife. The dispute arises out of the following circumstances. Under the by-laws of 1903, which were in force when the former Mrs. Farias died (September 22, 1907), it was provided by article 35, that upon the death of the wife of any member who shall be in the enjoyment of all his rights the society should collect from each of the married members the sum of twenty-five cents which should constitute a benefit payable to the widower to aid in defraying the expenses of his wife's funeral. This assessment the decedent had regularly paid as required up to the time of his former wife's death and upon her death was paid the benefit, as above stated, amounting to $262.25. Under the by-laws of 1903, the ordinary benefit payable to beneficiaries upon the death of a member was raised by an assessment of one dollar upon each surviving member. Under amendments made to the by-laws in 1909 the system was changed. The special assessments were abolished and the death benefits in fixed amounts were to be paid out of a fund of the society derived from the regular monthly dues which were then increased. It was then provided that upon the death of a member who shall have received a benefit upon the death of his wife the society should pay to his beneficiaries a benefit in the sum of $1100, and, if he had not received such benefit, the beneficiaries would be paid the sum of $1500, the benefit payable to a member upon the death of his wife being fixed at $400. These provisions were substantially re-enacted in the by-laws adopted in 1912 with the further provision, however, that in case the sum received by the member upon the death of his wife shall have been less than $400 "the Society shall pay to the beneficiaries out of the death benefit fund a sum which with that so received

by the member shall make a total of $1500." In the by-laws
of 1914 this last quoted clause does not appear. It was
therein provided that "Upon the occasion of the death of
any member * * * who shall not have at any time received
a death benefit by reason of the death of his wife, the Soci-
ety shall pay to the beneficiaries in accordance with these
by-laws the sum of $1500, if the member be of the Adult
Class, and $500 if the member be of the Juvenile Class"
(Art. 22). Also that "Upon the occasion of the death of
the wife of any member of the Adult Class * * * there shall
be paid to such member out of the Death Benefit Fund the
sum of $400" (Art. 23). And further that "Upon the death
of any member of the Adult Class * * * who shall have at
some time received a benefit upon the death of his wife,
there shall be paid to the beneficiaries in accordance with
these by-laws the sum of $1100" (Art. 24).

The contention advanced against the claim of the society
is to the effect that the abolition of the former system of
death benefits from special assessments and the substitu-
tion of benefits in fixed amounts payable out of a special
fund maintained for the purpose by the society so altered
the situation that any benefit paid to a member under the
old system is not to be taken into consideration, especially
where, as in this case, the benefit paid to the decedent in
1907, upon the death of his former wife, had practically
been "paid for" by him through the payment of special
assessments upon the death of wives of other married mem-
bers; that as the decedent had not been paid the $400
benefit under the later by-laws his beneficiaries should now
be paid the sum of $1500 less only the sum of $184.50 which
is admittedly deductible; and that this makes for reason-
ableness and equality, and is a fair construction of the pro-
visions in force at the date of the death of the decedent. On
behalf of the society it is pointed out that under article 22
of the by-laws of 1914 the death benefit of $1500 is payable

to the beneficiaries in case the deceased member "shall not have *at any time* received a death benefit by reason of the death of his wife," and that the provision of article 24 is that the benefit shall be $1100 when the deceased member "shall have *at some time received a benefit* upon the death of his wife." The society, however, is not insisting upon the right to deduct the sum of $400 by reason of the payment of the benefit upon the death of the former Mrs. Farias, but only the amount of the benefit then actually paid, i. e., $262.25. Conceding that there is some force in the line of argument made on behalf of the beneficiaries, we cannot avoid the effect of the clear language of the 1914 by-laws, as above quoted, and upon which counsel for the society lays stress. We have no doubt as to the validity of these provisions and we hold that the proper construction of them as applied to this case is that as the decedent did receive a death benefit from the society upon the death of his former wife his beneficiaries are now entitled to be paid only the sum of $1100 less the sum, above mentioned, of $184.50. But in view of the position taken by the society that it is prepared to pay the sum of $1053.25, judgment will be entered for that amount in favor of the defendants, other than the society, against the society.

*J. W. Russell* and *T. E. M. Osorio* for plaintiff.

*A. Perry* for the defendants other than the society.

*W. J. Robinson* for the society.